THE JOSEPH LAUGHLIN *v.* THE JAS. RUMSEY.

*(District Court, S. D. New York. January 20, 1890.)*

SALVAGE—STRANDING—APPREHENDED DANGER—PROMPTNESS.

A tug-boat, going upon signal to the relief of a ferry-boat stranded in a dangerous position, though not in immediate peril, and lying by her and assisting in getting her off the rocks, is entitled to salvage compensation. The service being short, the labor light, and without danger to the salving vessel, *held*, $300 is a reward sufficiently liberal to induce the promptest assistance in harbor cases.

In Admiralty. Libel for salvage.

*Peter S. Carter*, for libelant.

*Carpenter & Mosher*, for claimant.

BROWN, J. While the ferry-boat Jas. Rumsey was on her usual trip from Ninety-Ninth street, East river, to College point, at about half past 11 in the forenoon of July, 1889, she grounded on the rocks at Negro point. She signaled for assistance, and the steamer Sylvan Shore came along-side a few moments afterwards, and took off such of her passengers as wished to leave her. Soon afterwards several other tug-boats came in answer to her signals, and the libelant's tug, the Laughlin, was hired to remain by her, and give such assistance as might be needed. No price was named. The Rumsey had grounded on the point about amidships, heading eastward. The tide was strong flood. The point was a dangerous one, but she lay easy for the time being; and though upon an immediate examination of the Rumsey it was found that she was not leaking, and so far as appeared had not sustained any material injury, her situation was one of more or less danger, owing to the very rapid tide, from five to eight knots, and the tendency of the vessel in the rising tide to swing one way or the other, and possibly get again on the rocks, or suffer some twist, before she could be got under control by her own machinery; or, if her machinery should be obstructed in its full working power, she was liable to be carried on to Steep (Scaly) Rock on the other side, unless a tug was retained for assistance in an emergency. At the time when the Laughlin went to her the case was not one of immediate and present danger, but of a reasonable apprehension of danger, sufficient to bring the case within the line of salvage service. *The Plymouth Rock*, 9 Fed. Rep. 413. The Laughlin lay along-side of the Rumsey for about an hour and a half, when, in the rise of the tide, the Laughlin, working in conjunction with the Rumsey's engines, shoved her astern off the rocks, and then, by a line thrown to her stern quarter, checked the swinging of her stern in the strong flood-tide, and brought her to; whereupon she proceeded to College point, and thereafter performed her usual trips during the day. The Rumsey was taking the place of another boat laid up, and, to be safe against all contingencies, the services of the Laughlin were retained during two of those subsequent trips.

I can have no doubt, upon the foregoing facts, that when the Laughlin was hired compensation was contemplated by both parties on a salvage

basis, rather than a mere towage compensation at the ordinary rate of eight dollars an hour. The amount to be allowed must be determined with reference to the various elements on which such compensation is based. The ferry-boat was worth not over $10,000; the tug, somewhat less. As it turned out, the damage to the Rumsey was small, and her working power unaffected; so that it is probable, or at least possible, that she might have taken care of herself without any aid. There is no evidence of any danger to the Laughlin in rendering the services she rendered. There was no occasion for daring, and no special skill. The acutal service was short; it was attended by no difficulty, and by little labor. All the elements that enter into a salvage award exist herein but in a small degree. There were also plenty of other tugs ready to give any needed help. Four others, equally good, were in attendance. The Laughlin was selected instead of another tug, with whose master negotiations were already pending when the Laughlin arrived, because the Laughlin was at the time understood to have a wrecking pump that might possibly be serviceable. The Laughlin had no such pump, and none was in fact needed. These considerations preclude any large award. *The Baker*, 23 Fed. Rep. 109; award reduced, 25 Fed. Rep. 771. It is of great importance, however, in all cases of danger, or of apprehended danger, that, where a call for help is made, other boats able to aid should repair instantly to the place of danger; and, though the service finally found necessary may be comparatively small, the compensation allowed should be so far beyond the ordinary rates of daily work, and so liberal that there should never be the slightest hesitation in dropping ordinary business and running to the scene of danger. The rate of compensation must be such as to secure always the promptest assistance. Upon the above considerations I award the libelants $300 and costs; two-thirds of the award to go to the owners of the tug, and of the remaining third $25 to go to the master, and the rest to be divided among the master and the crew in proportion to their wages.